*Davis & Sturgis* and *J. S. Adams,* for defendant.

---

## WILLIAMS *et al. v.* WILKINSON COUNTY *et al.*

Petitioners were not entitled to the injunctive relief sought, and the court properly refused to grant it.
                MARCH 1, 1917.

Petition for injunction. Before Judge Kent. Twiggs superior court. April 26, 1916.

W. C. Williams and other landowners filed their petition against Twiggs County and its sheriff and Wilkinson County and its sheriff, alleging as follows: Petitioners are owners of lands lying near the boundary line between these two counties, which counties

are contiguous. The authorities of Wilkinson County claim that the lands in question are in that county, while the authorities of Twiggs County maintain that they are in the latter county. From time immemorial up to. year 1898 petitioners and the people of the community in which the lands are located, as well as the officers of the two counties, believed the lands to be in Twiggs County. The land "was in fact in Twiggs County, and still is in Twiggs County." Up to and including the year 1898 petitioners paid State and County taxes on the lands in and to Twiggs County, and not to Wilkinson County. According to a survey made by C. C. Anderson in the year 1898, under an executive order given on May 11, 1898, the lands were found to be in Wilkinson County. This survey and the executive order referred to were void and of no effect as fixing the line between the counties (for reasons set forth in the petition); but petitioners "were not advised as to these infirmities in said survey, and acquiesced in the Anderson line because the county authorities of the two counties did so, and from and after the year 1898 up to the year 1910 returned said lands for taxation and paid taxes in and to said County of Wilkinson." In 1909 the Governor of Georgia made an executive order appointing one Robert to survey and mark out the boundary line between the two counties, which he did, and returned to the office of the Secretary of State a survey and plat indicating the line, known as the Robert line. This survey located the lands in question in Twiggs County. Wilkinson County filed its protest and exceptions to the survey; and the Secretary of State, on March 8, 1910, after hearing entered an order determining the true boundary line between the two counties to be the line established by the Robert survey, which locates the lands of petitioners in Twiggs County. Petitioners are informed that the authorities of Wilkinson County claim that the Robert line and the proceedings just referred to were void, because the proceedings were had under an act of the General Assembly they claim to be unconstitutional; but petitioners were not aware of this infirmity, if it exists, not being skilled in the law, and acquiesced in the Robert survey. Believing that the Robert line was the true line, from the year 1910 to the year 1914 petitioners and their predecessors in title returned said lands for taxation in the County of Twiggs and there paid their taxes, except for the year 1914. The authori-

ties of Wilkinson County knew this and acquiesced therein, and made no effort to collect taxes upon said lands until the summer of 1914, when the tax-collector of Wilkinson County issued executions for double State and County taxes upon said lands for Wilkinson County for the years 1912 and 1913, and these executions have been levied, and in pursuance of the levy the lands have been advertised for sale. The same authorities are threatening to proceed to collect taxes upon said lands for the years 1910, 1911, and 1914; and the authorities of Twiggs County are about to proceed to collect taxes upon these lands for the year 1914. Petitioners are willing to pay taxes to whichever county is lawfully entitled to the same; but they submit that it would be unjust and inequitable for them to have to pay the same to both counties, or to determine the difficult legal and constitutional questions upon which the rights of the two counties as to said taxes are to turn. They pray, that the two counties and the officers who are attempting to enforce the tax executions be restrained; that Wilkinson County be required to set up in this suit any claim which it has to State and County taxes upon the said lands for the years 1910, 1911, 1912, and 1913 against the County of Twiggs; and that the court determine to which of said counties petitioners should pay the State and County taxes for the year 1914. Wilkinson County and the sheriff thereof demurred to the petition, and moved to dismiss the action upon the grounds, that Twiggs County was without jurisdiction of the demurrants; and that the petition was for interpleader between Wilkinson County and its sheriff and Twiggs County and its sheriff, and was not good as such. They also filed a plea to the jurisdiction, and contended that they were improperly joined as defendants with Twiggs County and its sheriff. The judge, being of the opinion that the superior court of Twiggs County was without jurisdiction of Wilkinson County and its sheriff, and that on the allegations of the petition no substantial relief could be granted against any resident of Twiggs County, denied the injunction.

*John R. L. Smith* and *Grady C. Harris,* for plaintiffs.

*Hardeman, Jones, Park & Johnston,* for defendants.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court did not err in refusing the injunction prayed. The plaintiffs are not entitled to the relief sought. They

allege in their petition that the lands in question are in Twiggs County, and not in Wilkinson County. Clearly, then, they are not entitled to injunctive relief against Twiggs County. Under the allegations of the petition the authorities of that county have a right to enforce their claims to taxes upon the lands by the issuance of tax executions, the levy thereof and the sale of the property, unless the owners come forward and pay the taxes. The petition showing on its face that the plaintiffs had no right to any substantial relief against Twiggs County, the superior court of that county was without jurisdiction of Wilkinson County and its sheriff. All this is clearly true independently of the act of 1903 (Acts 1903, p. 16), embodied in the Civil Code, §§ 1079-1081. But it is insisted by the plaintiffs that the dispute between the two counties comes within the provisions of the sections just referred to, providing for cases in which "a county claims to be entitled to the return and taxation of any property returned or about to be returned in another county." In section 1079 it is provided: "If a county claims to be entitled to the return and taxation of any property returned or about to be returned in another county, such county may apply to the superior court of such latter county, in a petition to which the taxpayer and all the counties claiming such taxes shall be made parties, for direction and judgment as to which county is under the law entitled to such return and taxes, the proceedings being in all respects the same as in other suits in equity, except that such petition shall be for final trial at the first term of the court, and shall, as in cases of injunction, be reviewed by a fast bill of exceptions to the Supreme Court." It is urged by counsel for the plaintiffs that the provision just quoted, that in the case stated a "county may apply to the superior court," should be so construed as to make the word "may" read "shall," thereby making the provision mandatory upon a county, in the situation contemplated by the law, and not merely permissive, to bring a suit against the county to which returns of property for taxation are about to be made. We can not agree with this contention. We do not think the word "may" should be construed as having the force of "shall" in the provision of law quoted above. That provision confers the right upon a county, where it is about to be deprived of taxes rightfully payable to it, to have that question settled as between itself and another county; but it should

not be so construed as to put it in the power of a landowner and taxpayer to force a county into litigation for the purpose of determining whether it is entitled to such taxes. To give the act the construction contended for might in some cases force a county into burdensome and vexatious litigation. We think, therefore, that the court properly refused the injunction.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*